2026 IL App (2d) 260084-U
No. 2-26-0084
Order filed July 17, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

*In re* PARENTAGE OF S.I., a Minor

(Andre I., Petitioner-Appellee v. Juliana G., Respondent-Appellant).

Appeal from the Circuit Court of Lake County.
Honorable Sharmila K. Manak, Judge, Presiding.
No. 22-FA-462

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion in finding that Lake County was the more appropriate forum to resolve the parties' custody dispute or in refusing to enroll the Colombia court's custody order.

¶ 2    Respondent, Juliana G., appeals the circuit court's orders resolving her petitions to transfer the proceedings and declining to enroll a foreign agreed order between her and petitioner, Andre I. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4    In January 2021, the parties' child, S.I., was born. On August 18, 2022, petitioner filed his petition to allocate parental responsibilities for S.I., and, on September 20, 2022, the court appointed a guardian *ad litem* (GAL) to the child. On October 18, 2022, respondent responded to

the allocation petition, admitting that S.I.'s home state is Illinois and alleging that petitioner "was an impulsive and violent individual" who had previously abused her in front of S.I.

¶ 5    On November 29, 2022, petitioner filed an emergency motion for supervised parenting time. In the motion, he acknowledged that, on November 7, 2022, the court entered a six-month order of protection prohibiting him from engaging in any "violent or harassing contact with [respondent]." Since then, however, he started residing with respondent in an attempt to reconcile their relationship. He alleged, however, that respondent suffered from depression, and he regularly witnessed her consume large amounts of alcohol. On Thanksgiving, respondent purportedly attempted suicide. Petitioner consequently obtained an emergency order of protection against respondent, naming S.I. as a protected party, and left the family home. Given respondent's instability, petitioner argued that the court should place S.I. under his care and supervise respondent during any subsequent parenting time.

¶ 6    On December 14, 2022, the court entered an agreed order containing respondent's schedule for supervised parenting time. Additionally, the court required the parties to undergo alcohol testing.

¶ 7    On December 29, 2022, respondent filed her petition for allocation of parental responsibilities and child support. She argued that, because of petitioner's continuing abuse and alcoholism, the court should award her primary responsibility over S.I.

¶ 8    On January 17, 2023, petitioner filed an emergency motion to immediately suspend respondent's supervised parenting time, arguing that respondent violated the December 14, 2022, agreed order. On January 19, 2023, the court entered an order suspending respondent's parenting time but reinstated it on January 27, 2023.

¶ 9     On February 14, 2023, respondent filed a motion to terminate the restrictions set forth in the December 14, 2022, agreed order and to reallocate parental responsibilities. On March 16, 2023, the court terminated its earlier requirements concerning respondent's parenting time and alcohol testing. On April 5, 2023, the court entered an order awarding both parents equal parenting time.

¶ 10    In July 2023, the parties traveled to Colombia. On August 28, 2023, while the parties remained there, the court entered its allocation judgment, which was prepared by the GAL and signed by both parties. The judgment reiterated that the court held exclusive jurisdiction over the matter before awarding the parties equal parenting time and "joint significant decision making" over S.I. The judgment further stated:

> "[a] parent who wishes to relocate the minor child must provide [w]ritten [n]otice of the relocation to the other parent at his/her address. A copy of the [n]otice must be filed with the [c]lerk of the [c]ircuit [c]ourt of Lake County, Illinois, in which this [j]udgment is entered and mailed to the other parent ***."

Pursuant to the judgment, the "non-relocating" parent could either acquiesce or object to S.I.'s relocation. If the parties could not reach an agreement as to S.I.'s relocation, the relocating parent was required to file a petition "with a court of competent jurisdiction" seeking permission to relocate. The judgment also required the parties to engage in mediation should they be unable to reach an understanding as to any major decisions involving S.I. "except in the case of emergency."

¶ 11    On November 29, 2023, petitioner filed an emergency motion for the immediate return of S.I. In the motion, petitioner described how the parties would frequently travel to Colombia together to see their respective families. There, in September 2023, petitioner purportedly ended his relationship with respondent. Since then, according to petitioner, respondent denied him any

contact with S.I. Because respondent therefore violated the parties' allocation judgment, petitioner argued that she should be held in indirect civil contempt. On December 8, 2023, respondent responded to the emergency motion, alleging that petitioner had violently attacked her while in Colombia. On December 14, 2023, the court entered an order requiring respondent to allow petitioner his allocated parenting time. Furthermore, the court required her to return to Illinois with S.I. on or before December 24, 2023. Thereafter, the GAL would prepare a report concerning the incident.

¶ 12    On December 21, 2023, respondent filed her motion to reconsider the December 14, 2023, order, alleging that Colombian authorities were conducting a criminal investigation into petitioner's alleged abuse. She further alleged that she had obtained "orders equivalent to Illinois orders of protection" including "provisions for parenting time." Respondent argued that she was unable to comply with the court's December 14, 2023, order because it was inconsistent with the Colombian court orders and requested that the latter order be withdrawn.

¶ 13    On January 30, 2024, petitioner filed his petition for indirect civil contempt of court, alleging that respondent—who remained in Colombia—continued to withhold S.I. from him. Also on January 30, 2024, petitioner answered respondent's motion to reconsider, alleging that she had been the aggressor in the September 2023 incident. On February 14, 2024, the court entered an order requiring the parties to appear in person on April 1, 2024, for hearing on respondent's motion to reconsider and petitioner's petition for indirect civil contempt.

¶ 14    On March 27, 2024, respondent filed a supplement to her motion to reconsider, containing a Colombian order of protection, an October 27, 2023, "[f]inal [d]ecision" from a Colombian "[f]amily [c]omissioner," a "Colombian Superior Court Order" filed December 19, 2023, and a December 28, 2023, letter from the Colombian "Migration Ministry of Foreign Affairs."

¶ 15 In its final decision, the family commissioner noted the parties' history, recounting that each had abused each other. Nonetheless, the family commissioner found that the "violence exercised by [petitioner] against [respondent]" posed a more serious concern. The decision also contained provisions for temporary support and awarded respondent "provisional custody and personal care of [S.I.]" during each week, while petitioner would care for him over every weekend.

¶ 16 In its December 19, 2023, order, the Colombian Superior Court found that petitioner "perpetrated various forms" of "continuous" "physical," "psychological," and "economic" abuse against respondent and S.I. throughout the family relationship.

¶ 17 Last, in its December 28, 2023, letter, the Colombian Migration Ministry of Foreign Affairs stated that, as a result of the Colombian Superior Court's order, S.I. could not depart the country.

¶ 18 On April 2, 2024, the court denied respondent's motion to reconsider its December 14, 2023, order.

¶ 19 On May 15, 2024, the court entered an order finding that respondent admitted, both in open court and her pleadings, to defying its December 14, 2023, order. It issued a rule for respondent to show cause for violating its orders.

¶ 20 On September 5, 2024, the court entered an order reiterating its "[o]riginal and [c]ontinuing [j]urisdiction" over the matter and required respondent to appear, in person, on September 30, 2024, or a warrant would be issued for her arrest.

¶ 21 On October 2, 2024, the parties appeared for continued hearing on the court's rule to show cause. During the hearing, respondent maintained that Colombia had "ordered [S.I.] not to leave the country," although she never made clear "whether it was a court, tribunal, police agency or other department" that prohibited his travel. Based on the various Colombian documents presented, the court reasoned that respondent had been the impetus behind the travel restriction.

Thus, because she intentionally frustrated her own ability to abide its orders, the court granted petitioner's motion for a directed finding of contempt. The court stayed sentencing to give respondent another opportunity to facilitate S.I.'s return.

¶ 22   On January 8, 2025, respondent filed her first motion for a *forum non conveniens* finding or, in the alternative, for "deferral or dismissal of [the] enforcement proceedings in Illinois." In the motion, she noted that she recently "filed a petition seeking financial remedies in the Colombian [courts]" as a result of the dissolution of her "common law marriage" with petitioner. The Colombian court "determined that it ha[d] jurisdiction over the parties and the child," and, because it presented a "far more convenient forum" for the parties, petitioner sought to "dismiss all [the Lake County] proceedings" and transfer the matter to Colombia.

¶ 23   On January 21, 2025, the court held hearing on respondent's motion for a *forum non conveniens* finding or, in the alternative, her motion to dismiss the enforcement proceedings. No transcript from the hearing is contained within the record. However, on January 29, 2025, the court entered an order outlining its reasoning in denying the motion. Specifically, the court listed and analyzed certain factors set forth in section 207 of the Illinois Uniform Child Custody Jurisdiction and Enforcement Act (750 ILCS 36/207 (West 2024)) (UCCJEA) to determine that Illinois remained the more convenient forum for the parties' dispute:

> "[1]. *Which forum can best protect the parties if there is domestic violence.* There was an altercation in Colombia and the parties disagree as to who started the altercation. *** Illinois also has an abundance of resources available to protect victims of domestic violence and the ability to protect children. In this case, a [GAL] was appointed to represent the best interests of S.I. and help ensure that the child was kept safe.

[2]. *The length of time the child resided out of state.* The child was born in Illinois, has just had his fourth birthday, and spent his first few years here. The only reason the child is in Colombia is because of [a] domestic incident that took place there and [respondent's] subsequent actions asking that the child be prohibited from returning to Illinois. The parties signed an Illinois Allocation Judgment after they had already traveled together with the child to Colombia. Therefore, demonstrating to the [c]ourt that it was their intent for the child to come back to Illinois. A motion for relocation was never filed by [respondent] before this [c]ourt prior to her petitioning the Colombian courts for prohibitions on S.I.'s travel and guardianship.

[3]. *The distance between the two jurisdictions.* The distance between both jurisdictions is significant as they are in two different countries. ***

[4]. *The financial resources of the parties.* Per [respondent], her family is helping support her. *** [Petitioner] is financially stable and is traveling to and from Illinois to Colombia for court.

[5]. *Agreement of the parties*[.] There is no agreement between the parties as to the jurisdictional issues. [Respondent] argued that [petitioner] traveling back and forth to Colombia for court dates somehow demonstrates that Colombia is the more convenient forum. However, [petitioner] cannot be faulted for attending court dates that were not initiated by him that involve his son and assets. ***

[6]. *Nature and location of evidence required to resolve the pending litigation including testimony of the child.* This [c]ourt was privy to all the proceedings that [led] up to the entry of the [a]llocation [j]udgment, including but not limited to, the history between the parties, the prior finances of the parties, child support orders, the medical issues that

[led] to [respondent's] parenting time being restricted, and the [GAL] recommendations as to what is in the best interest of S.I. ***

[7]. *Which court can decide the case expeditiously*. This [c]ourt is not familiar with the Colombian court process. This [c]ourt is more than capable of handling any issues relating to S.I. as it was the [c]ourt who entered the [a]llocation [j]udgment and has the relevant history. This [c]ourt also has the benefit of a [GAL] who represents the child's best interests and can inform the [c]ourts [*sic*] of recommendations or any issues that are concerning. ***

[8]. *Familiarity with the facts*. Colombia is familiar with the facts of the domestic violence incident that occurred in Colombia. However, this [c]ourt is familiar with the history of the parties, the facts that lead to the [a]llocation [j]udgment and what has occurred since that time."

¶ 24 On January 23, 2025, the court held its penalty hearing. It found that, despite its earlier directives, respondent had further delayed S.I.'s return by filing the new Colombian case. Again, the court ordered respondent to return S.I. to Illinois.

¶ 25 On February 5, 2026, the court found that the latest Colombian proceedings "ha[d] been largely resolved by the issuance of an agreed order." The order is encapsulated in the Colombian court's January 31, 2025, judgment.

¶ 26 On February 24, 2025, respondent filed her second motion for a *forum non conveniens* finding. The motion largely reiterated the arguments contained in the first motion but also referenced the Colombian court's January 31, 2025, judgment.

¶ 27 On March 13, 2015, the court entered an order requiring the parties to appear in person on April 17, 2025, for hearing on respondent's second motion seeking a finding of *forum non*

- 8 -

*conveniens*. Respondent failed to appear on that date, however, and her counsel informed the court that respondent was reluctant to travel because she was in the first trimester of a previously undisclosed pregnancy. Counsel offered for respondent to testify, via Zoom teleconference, of the pregnancy. During her testimony however, respondent became irate. The court disconnected respondent's audio and issued another rule for respondent to show cause for her earlier failure to appear. It further specified that, if respondent failed to appear, in-person, on April 24, 2025, or otherwise give sufficient proof excusing her earlier infractions, her second motion for a finding of *forum non conveniens* would be "stricken, instanter."

¶ 28 On April 24, 2025, the court entered an order noting respondent's failure to attend the subsequent hearing or to provide any proof that she was medically unable to travel. The court struck her second *forum non conveniens* motion and prohibited her from filing any similar motions in the future. However, because respondent purportedly resolved certain of S.I.'s travel impediments, the court vacated its earlier rule.

¶ 29 On May 20, 2025, respondent filed her petition to enroll the Colombian court's January 31, 2025, judgment. On June 6, 2025, petitioner objected to the petition and, on June 25, 2025, filed his answer thereto. In the answer, petitioner argued that he was "forced and coerced" into entering the Colombian agreed order. On October 1, 2025, the court held a hearing on the petition, in which it noted its uncertainty as to the Colombian court's jurisdiction, as well its concerns that the Colombian court did not adequately consider S.I.'s best interests. It subsequently denied the petition. On October 30, 2025, respondent filed a motion for the court to reconsider, which the court denied on January 22, 2026.

¶ 30 Respondent timely appeals.

¶ 31                                    II. ANALYSIS

¶ 32    On appeal, respondent argues that the trial court erred in denying both of her motions for a finding of *forum non conveniens* and her request to enroll the Colombian judgment. We reject both contentions.

¶ 33                              A. *Forum Non Conveniens*

¶ 34    First, because Illinois remains the most convenient forum for resolving the parties' parenting time, respondent has failed to show that the trial court abused its discretion in denying her motions for a finding of *forum non conveniens*. Under section 207 of the UCCJEA, an Illinois court holding exclusive and continuing jurisdiction to make custody determinations over a minor child may "decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another [location] is a more appropriate forum." *In re Marriage of Rickett*, 2020 IL App (3d) 180657, ¶¶ 17, 20 (citing 750 ILCS 36/207(a) (West 2024)). The following factors should be considered in determining whether a forum is inconvenient:

"(1) [W]hether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) [T]he length of time the child has resided outside this State;

(3) [T]he distance between the court in this State and the court in the state that would assume jurisdiction;

(4) [T]he relative financial circumstances of the parties;

(5) [A]ny agreement of the parties as to which state should assume jurisdiction;

(6) [T]he nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) [T]he ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) [T]he familiarity of the court of each state with the facts and issues in the pending litigation." 750 ILCS 36/207(b) (West 2024).

We will not reverse a court's decision to deny a motion for a finding of *forum non conveniens* absent an abuse of discretion. *Rickett*, 2020 IL App (3d) 180657, ¶ 18. "An abuse of discretion occurs only where no reasonable person could agree with the trial court." *Id.*

¶ 35                                     1. Respondent's First Motion

¶ 36     Here, respondent argues that "the events and circumstances that arisen [*sic*] since August 28, 2023, render[ed] Illinois *** an inappropriate forum to resolve the child custody issues that have arisen between the parties." Concerning the first statutory factor, respondent contends that the record reflects a history of abuse that followed the parties to Colombia.

¶ 37     Regarding the second factor, respondent argues:

"At the time of the domestic violence incident in Colombia in September[] 2023, the child had been in Colombia for only two months, but, because the child was only two and one-half years old, the intervening period is equally long."

¶ 38     As to the third factor, respondent acknowledges the considerable distance separating Colombia and Illinois. Still, she maintains that "this factor, in and of itself, does not favor either party."

¶ 39     The fourth and fifth factors, according to respondent, are not relevant to her first motion for a finding of *forum non conveniens*.

¶ 40     Respondent argues that the sixth factor, however, strongly favors transfer. She notes that "[t]he events and circumstances, including the incident of domestic violence *** all occurred in

Colombia, thousands of miles from Illinois" and "were conducted in the Spanish language." She argues, without any citation to the record, that the Colombian investigations were "far more wide-ranging than [any] Illinois investigation was, as well as being more recent and therefore more relevant." Additionally, respondent argues that, given his age, S.I. would likely only be able to testify about events that occurred in Colombia.

¶ 41    Concerning the seventh factor, respondent argues that the Colombian court has already resolved the matter in its January 31, 2025, order, meaning an expeditious resolution to the parties' dispute lies in wait.

¶ 42    Finally, with regards to the final factor, respondent argues—again without any citation to the record—that the "Colombian [c]ourt has made a much more recent and manifestly more comprehensive investigation into [S.I.'s] best interests." We disagree.

¶ 43    The trial court did not abuse its discretion in finding that the relevant factors do not favor transfer. Although the most recent domestic violence allegations arose in Colombia, respondent's argument overlooks the court's solid reasoning that Illinois had presided over the parties' custody proceedings for more than a year and was already familiar with their relationship, financial circumstances, prior allegations of abuse, and the circumstances culminating in the allocation judgment. Indeed, the court had already appointed a GAL to represent S.I.'s best interests, who helped compile the parties' August 28, 2023, allocation judgment, which the Colombian court purportedly relied on in entering its own judgment. Even more, the parties' August 28, 2023, allocation judgment, which was entered after the parties had already traveled to Colombia, undercuts any argument that the parties' intended to stay in Colombia to litigate custody.

¶ 44    While respondent principally relies on the latest domestic violence incident and S.I.'s extended residence in Colombia in arguing for transfer, the court reasonably concluded that those

circumstances do not outweigh Illinois' longstanding involvement in the case, particularly where the Illinois court had already appointed a GAL to investigate and protect S.I.'s best interests, and where S.I.'s long residence in Colombia is only the result of respondent's repeated, intentional violations of the Illinois court's various orders. Moreover, respondent cites no portion of the record supporting her assertion that the Colombian investigations were more robust than those conducted in Illinois, and the contention is therefore forfeited. *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. In any event, any disparity between the investigations would necessarily stem from respondent's failure to comply with the Illinois court's orders to return S.I.—not necessarily because of an imbalance in judicial resources. For all of these reasons, we find that the court did not abuse its discretion in denying respondent's first motion for a finding of *forum non conveniens*.

¶ 45                                    2. Respondent's Second Motion

¶ 46    Next, because respondent fails to actually challenge the basis underlying the court's ruling on her second motion for a finding of *forum non conveniens*, she has failed to demonstrate that the court abused its discretion in striking the motion. A party forfeits a point by failing to raise it in their opening brief or by failing to support it with relevant authority. *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010).

¶ 47    Regarding her second motion for a finding of *forum non conveniens*, respondent largely reiterates the arguments made in her first motion, but additionally asserts that the Colombian court's January 31, 2025, order, which preceded the second motion, establishes that the parties contemplated resolving the matter in Colombia. Thus, respondent contends that the court abused its discretion in striking her second motion.

¶ 48    Respondent's arguments fail to address the actual basis for the court's ruling. The record makes clear that the court struck respondent's second motion because she failed to appear in

- 13 -

person, as previously ordered, to argue the motion—not because the court found it to be substantively meritless. While respondent concludes that the court acted unreasonably in striking the motion, she provides no argument or authority demonstrating how its ruling constituted error. Accordingly, the argument is forfeited, and respondent has failed to show that the court abused its discretion in striking her second motion for a finding of *forum non conveniens*. *Vancura*, 238 Ill. 2d 369-70.

¶ 49                            B. The January 31, 2025, Colombian Order

¶ 50    Next, because respondent similarly neglects to address the basis for the court's denial of her petition to enroll the Colombian judgment, she has failed to show that the court's ruling constituted an abuse of discretion. Generally speaking, section 206 of the UCCJEA prohibits Illinois courts from instituting simultaneous proceedings concerning the custody of a child. 750 ILCS 36/206 (West 2024). Furthermore, under section 105 of the UCCJEA, "a child-custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of [the UCCJEA] must be recognized and enforced ***." *Id.*

¶ 51    Here, respondent argues that, by refusing to enroll the January 31, 2025, Colombian judgment, the court violated the spirit of section 105, which "clearly expresse[s]" a "public policy against simultaneous custody proceedings and conflicting custody orders." Respondent further contends that, despite the court's misgivings, the record contains no evidence suggesting that the Colombian courts violated petitioner's due process, or that the Colombian courts were unable "to address and resolve the domestic violence concerns raised by [petitioner's] conduct *** and the child protection and custody issues that followed." Respondent therefore argues that the court lacked any practical reason to deny her petition, particularly because section 105 requires Illinois courts to recognize custody determinations " 'made in a foreign country under the factual

circumstances in substantial conformity with the jurisdictional standards of [the UCCJEA].' " (citing 750 ILCS 36/105 (West 2024)).

¶ 52    Again, respondent's arguments fail to address the basis for the circuit court's ruling. The record reveals that the court denied respondent's petition to enroll the Colombian judgment for a myriad of reasons. Among them, the court questioned whether the Colombian court substantially complied with the UCCJEA's jurisdictional standards or adequately considered S.I.'s best interests. Respondent has yet to provide any argument or authority demonstrating that the Colombian court substantially conformed to the UCCJEA's jurisdictional requirements or that it adequately considered S.I.'s best interests. Accordingly, respondent forfeits these arguments and has failed to show to demonstrate that the court abused its discretion in denying her petition to enroll the Colombian judgment. *Vancura*, 238 Ill. 2d at 369-70.

¶ 53                                III. CONCLUSION

¶ 54    For the reasons stated, we affirm the judgment of the circuit court of Lake County and remand for further proceedings.

¶ 55    Affirmed.